# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RYAN C.,[1] | : | Case No. 3:21-cv-00069 |
| Plaintiff, | : | |
| | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

**I.    INTRODUCTION**

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in April 2018. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. He subsequently filed this action without the assistance of counsel.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 16), the Commissioner's Memorandum in Opposition (Doc. 17), and the administrative record (Doc. 11). Plaintiff did not file a Reply; however, Plaintiff filed a "Supplement to Statement of Specific Errors" which consists of medical records for the time period from December 28, 2018, to October 15, 2021. (Doc. 19.)

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since December 19, 2017. At that time, he was 50 years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).[3] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 11-2, PageID 53-63), Plaintiff's Statement of Errors (Doc. 16), the Commissioner's Memorandum in Opposition (Doc. 17), and Plaintiff's "Supplement to Statement of Specific Errors." (Doc. 19.) Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

2

U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since December 19, 2017, the alleged onset date. |
| Step 2: | | He has the severe impairments of degenerative disc disease, diabetes mellitus, and hypertension. |
| Step 3: | | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |

4

| | |
|---|---|
| Step 4: | His residual functional capacity, or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "(1) occasionally push and/or pull with the bilateral upper extremities; (2) occasionally reach overhead with the bilateral upper extremities; (3) occasionally climb ramps and stairs; (4) never climb ladders, ropes, or scaffolds; (5) frequently balance, stoop, kneel, or crawl; and (6) no exposure to unprotected heights or moving mechanical parts." |
| | He is able to perform his past relevant work as a warehouse worker and machine operator II. |
| Step 5: | In the alternative, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Doc. 11-2, PageID 56-62.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 62-63.)

## V.   ANALYSIS

In his Statement of Errors, Plaintiff reiterates his medical history. (Doc. 16.) As discussed above, Plaintiff subsequently submitted a "Supplement to Statement of Specific Errors," but this document contains additional medical records and does not identify any specific errors with the ALJ's decision currently before the Court. (Doc. 19.) Defendant argues: "To the extent [Plaintiff's Statement of Errors] contains any discernible legal arguments, they are skeletal and underdeveloped, and should be considered waived." (Doc. 17, PageID 632.) However, Plaintiff's *pro se* status warrants a liberal construction of the pleadings in his favor. *See Wright-Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392, 396 n.1 (6th Cir. 2010).

Accordingly, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings. For the reasons discussed below, the Court finds that the ALJ committed reversible error by improperly evaluating the severity of Plaintiff's symptoms.

### A. **Applicable Law**

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. *See* 20 C.F.R. § 404.1529(c)(1); Soc. Sec. R. 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017) (effective March 28, 2016). First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which those symptoms limit her ability to perform work-related activities. *Id.* at *4. The ALJ must examine "the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record." *Id.* at *4-5.

In addition to this evidence, the ALJ should consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

6

    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ is not required to discuss every factor in every case—for example, if there is no evidence regarding one of the factors, that factor will not be discussed because it is not relevant to the case. SSR 16-3p at *8. However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

    Notably, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*. at *9. But the ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The ALJ may even need to "contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.*

7

The SSR lists possible reasons for not pursing treatment that an ALJ can consider when evaluating an individual's treatment history. 2017 WL 5180304, *10. The SSR clarifies that the listed reasons are merely examples and states that an ALJ "*will* consider and address reasons for not pursuing treatment that are pertinent to an individual's case." *Id.* (emphasis added). Moreover, the ALJ "*will* explain how [he or she] considered the individual's reasons" when evaluating the individual's symptoms. *Id.* (emphasis added). The Sixth Circuit has confirmed that, pursuant to SSR 16-3p, the ALJ should consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

B.  **The ALJ's Decision**

In this case, the ALJ first determined that Plaintiff has medically determinable impairments (degenerative disc disease, diabetes mellitus, and hypertension) that could reasonably cause the type of symptomatology alleged. (Doc. 11-2, PageID 56-57, 60.) Next, the ALJ considered the evidence in the record and concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 60.)

In her evaluation of Plaintiff's symptom severity, the ALJ made several references to Plaintiff's treatment history. First, the ALJ commented on the conservative nature of Plaintiff's treatment for his pain. In her explanation of the persuasiveness of consultative

physician Dr. Swedberg's opinion, the ALJ stated that Plaintiff's back pain was "treated exceptionally conservatively with physical therapy." (Doc. 11-2, PageID 59.) The ALJ also addressed Plaintiff's compliance with treatment and essentially concluded that Plaintiff's non-compliance with medications caused his diabetes and hypertension to be uncontrolled. (Doc. 11-2, PageID 57-59.) First, the ALJ explained at Step 2:

> His [diabetes mellitus] is noted as uncontrolled, as the claimant is non-compliant with his medications. He does not take insulin (6F/11-12, 7F/2, 9), and does not properly monitor his blood glucose levels (Hearing Notes). . . . The claimant's hypertension is also noted as uncontrolled, and like with his [diabetes mellitus], he is notably non-compliant with his medication (5F/6, 6F/11).

(*Id.* at PageID 57.) In her explanation of the persuasiveness of Dr. Swedberg's opinion, the ALJ stated that Plaintiff's diabetes mellitus and hypertension "are uncontrolled only due to his non-compliance with medication." (*Id.* at PageID 59.) Finally, in the symptom severity discussion, the ALJ determined: "The record reflects that [Plaintiff] could have controlled his [diabetes mellitus] and hypertension if he was compliant with his medication. (*Id.* at PageID 60.) The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not fully supported." (*Id.*)

However, the ALJ did not account for or address Plaintiff's statements in the record which could provide a reasonable explanation for his treatment history. For instance, when Plaintiff's provider documented "significantly elevated" blood pressure and A1C levels during a primary care visit on May 21, 2018, Plaintiff told his provider that he had not taken "any med[ications] for [the] last two months due to no insurance."

9

(Doc. 11-7, PageID 427.) On May 25, 2018, Plaintiff said he was homeless and sleeping "on family or friend's [sic] sofa and at times in his car." (Doc. 11-7, PageID 493.) On August 31, 2018, Plaintiff told his family physician that he forgot to take his medication on "multiple days each week." (Doc. 11-7, PageID 487.) Plaintiff also stated that he had not been checking his blood sugars because he did "[no]t like needles." (*Id.*) He requested a "non-sticking glucose meter." (*Id.* at PageID 488.) Subsequent notes from Dr. Thuney's office indicate that Plaintiff's insurer denied his request for a new blood glucose meter. (*Id.* at PageID 490-91.) The ALJ did not acknowledge any of these of these explanations in the decision.

Significantly, SSR 16-3p specifically identifies the inability to afford treatment as one possible reason for an ALJ to consider when evaluating an individual's treatment history. 2017 WL 5180304, *10. Plaintiff's forgetfulness and aversion to needles constitute other reasons "pertinent to [Plaintiff's] case" that the ALJ should have considered and explained in the decision. *See id.* The ALJ's failure to evaluate Plaintiff's stated reasons for not complying with treatment and not seeking treatment in a manner consistent with his complaints, as required by the applicable Social Security regulations, constitutes reversible error.

In further contravention of the regulations, the ALJ did not develop the record and ask Plaintiff why he did not comply with or seek treatment consistent with his complaints. The ALJ did ask Plaintiff at the hearing about his treatment for pain, and Plaintiff responded that he had received physical therapy and took pain medication. (Doc. 11-2, PageID 88). But the ALJ did not ask any follow-up questions about why Plaintiff

had not sought any additional treatment. (*Id.*) The ALJ did ask Plaintiff why he had not been checking his blood sugars. (*Id.* at PageID 89.) Plaintiff acknowledged that he did not check his levels as often as needed but said that he "hate[s] needles." (*Id.*) The ALJ did not ask any follow-up questions about Plaintiff's aversion to needles; nor did she acknowledge this explanation in the decision. (*Id.*, *see* also Doc. 11-2, PageID 53-63.) Further, when asked about hypertension, Plaintiff responded that he had been checking his blood pressure levels and taking his medications "like [he was] supposed to." (Doc. 11-2, PageID 89.) The ALJ did not follow up or ask Plaintiff about the medical records that, in conflict with his testimony, referenced non-compliance with his hypertension medications.

Despite failing to develop the record, the ALJ relied heavily on Plaintiff's conservative treatment history and noncompliance, and ultimately concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not fully supported." (*Id.* at PageID 57-60.) The ALJ's heavy reliance on Plaintiff's noncompliance and conservative treatment, coupled with the ALJ's failure to develop the record and consider any of Plaintiff's reasons for not complying with treatment or seeking treatment consistent with the degree of his complaints, violates applicable Social Security rules and regulations, and constitutes reversible error.

## VI. CONCLUSION

The ALJ inadequately evaluated Plaintiff's symptom severity and treatment history under SSR 16-3p because she failed to consider possible reasons for Plaintiff's failure to comply with treatment or seek treatment consistent with the degree of

11

complaints alleged. She also failed to develop the record by inquiring why Plaintiff was noncompliant or did not seek additional or more aggressive treatment. The ALJ's failure to evaluate Plaintiff's symptoms and treatment history pursuant to the applicable legal requirements is an error of law warranting reversal.

## VII.  REMAND

As discussed above, Plaintiff's "Supplement to Statement of Specific Errors" consists of medical records from the time period from December 28, 2018, to October 15, 2021. (Doc. 19.) Thus, the question is whether the Court should remand the case to the ALJ for consideration of the evidence submitted after the ALJ's decision.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding that the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249. Remand may also be warranted when new and material evidence is presented and there is "reasonable probability" that the ALJ would have rendered a differing decision if presented with the new evidence. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

Alternatively, pursuant to Sentence Six of 42 U.S.C. § 405(g), the Court has the authority to "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).  Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Such evidence is "material" only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* Further, a claimant shows "good cause" by demonstrating "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* Plaintiff bears the burden of demonstrating that a Sentence Six remand is appropriate. *Id.; see also Allen v. Comm'r of Soc. Sec.* 561 F.3d 646, 653 (6th Cir. 2009).

In this case, some of the evidence Plaintiff submitted to the Court satisfies the "new" requirement. Records dated after the ALJ's decision were "not in existence or available" to Plaintiff at the time of the hearing. *Foster*, 279 F.3d at 357. Turning to the question of materiality, an October 2021 progress note from Five Rivers Family Health Center references a "recent" cervical spine MRI. (Doc. 19-1, PageID 765.) Plaintiff did not submit the actual MRI report referenced in that note, but his provider summarized the MRI as "showing degenerative changes without C3-4 disc protrusion and narrowing of spinal canal with [a] mild degree of cord compression." (*Id.*) Although the findings documented on the MRI arguably relate back to the time period adjudicated by the ALJ, these findings parallel the pathology documented on the August 2018 cervical spine x-rays, which showed advanced spondylosis at C5-6, moderate degenerative changes at C6-7, and mild degenerative changes at C4-5. (Doc. 11-7, PageID 483.) This evidence is therefore not "material" and does not support a Sentence Six remand.

The remaining records essentially consist of primary care progress notes and laboratory reports, which are cumulative of Plaintiff's overall medical condition. (*See generally* Doc. 19-1.) These records show findings that are similar to the findings in the record the ALJ reviewed. For example, the new evidence documents uncontrolled diabetes mellitus and hypertension, exhibited by elevated blood sugar and blood pressure levels, but with no significant or consistent symptoms. (*See, e.g.*, *id.* at PageID 719, 720, 744, 782, 803, 840, 887.) Physical examinations showed some abnormalities, which included limited cervical range of motion, left-sided weakness, tenderness to palpation, and paraspinal muscle spasms, but only on a few occasions. (*See, e.g., id.* at PageID 707,

14

712, 755, 804, 840.) Many other examinations were normal. (*See, e.g., id.* at 712, 735, 777, 782, 810, 883.) Because these findings are similar to the findings reviewed by the ALJ—and because the cervical spine MRI findings are similar to those documented in the August 2018 cervical spine x-rays—there is no "reasonable probability" that the ALJ would have reached a different conclusion if presented with the new evidence. *Foster*, 279 F.3d at 357. Accordingly, the new evidence is not "material," and a Sentence Six remand is not warranted.

Although a Sentence Six remand is not appropriate, remand is warranted under Sentence Four of 42 U.S.C. § 405(g) for the reasons discussed above. This presents the question of whether the Court should remand for further proceedings or an immediate award of benefits. A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176.

Instead, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. 16) be GRANTED;

2. The Court REVERSE the Commissioner's non-disability determination;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and any Decision and Entry adopting this Report and Recommendations; and

5. This case be terminated on the Court's docket.

                              */s/ Caroline H. Gentry*
                              Caroline H. Gentry
                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).